**UNITED STATES of America,**
**Plaintiff,**

v.

**W.R. GRACE, Alan R. Stringer, Henry A. Eschenbach, Jack W. Wolter, William J. McCaig, Robert J. Bettacchi, O. Mario Favorito, Robert C. Walsh, Defendants.**

**No. CR 05–07–M–DWM.**

United States District Court,
D. Montana,
Missoula Division.

Sept. 30, 2005.

William B. Jacobson, Laurence A. Urgenson, Kirkland & Ellis LLP, Gary A. Winters, Mayer Brown Rowe Maw LLP, Washington, DC, Carl J. Oreskovich, Holden & Oreskovich, Spokane, WA, Charles E. McNeil, Stephen R. Brown, Jr., Kathleen L. Desoto, Garlington, Lohn & Robinson, C.J. Johnson, Kalkstein Law Firm, Missoula, MT, Ronald F. Waterman, Gough Shanahan Johnson Waterman, Palmer A. Hoovestal, Hoovestal Kakuk & Fanning, Helena, MT, Elizabeth Van Doren Gray, Sowell Gray Stepp & Lafitte, Columbia, SC, William A. Coates, Roe Cassidy Coates & Price, Greenville, SC, Stephen A. Jonas, Wilmer Cutler Pickering Hale, Boston, MA, Keith Strong, Dorsey & Whitney, PC, Great Falls, MT, Tyler D. Mace, for Defendants.

## ORDER

MOLLOY, Chief Judge.

### I. Introduction

Defendant W.R. Grace seeks to compel the government to comply with rules governing public statements about this case. All of W.R. Grace's co-Defendants have joined in the motion. The issue involves public statements by the prosecuting attorneys and their agents which are allegedly improper attempts by the United States to taint the jury pool and prejudice the Defendants. The United States opposes the motion. I have grave concerns that my message to counsel was not heard or perhaps not understood. Nonetheless, the motion is denied for the following reasons.

### II. Factual Background

The prosecutorial conduct Defendants complain of begins with the public announcement of the Indictment in this case on February 7, 2005. In particular, Defendants take issue with statements by United States Attorney William Mercer that "[a] human and environmental tragedy has occurred in Libby," and that the prosecution in this case "seeks to hold Grace and its executives responsible for the misconduct alleged." Attorney Mercer's press play was unfortunate. The Court addressed the manner of his announcement of the Indictment at the scheduling conference on March 9, 2005, stating, "Had I had anything to say about how the Indictment was presented, it wouldn't have been done in the fashion it was, but I didn't have any say about it. I do have say now."

I set forth my general expectations regarding pretrial publicity, saying:

> I do know one thing. It's very hard to rule on objections that are in the newspaper. I will expect everybody in this room to understand what I'm saying. I don't want to take it any further than that. I don't want lawyers quoted in the

paper ... [T]his case will not be tried in the press. I hope I am being clear.

The following day, on March 10, 2005, a Victim Witness Specialist from the United States Attorney's Office met with members of the Libby community at a Community Action Group (CAG) meeting. The United States Attorney's Office purportedly held the meeting pursuant to the Justice For All Act, which enumerates the rights of federal crime *victims* and requires the Department of Justice and its employees and officers to make best efforts to inform *victims* of their rights under the Act. While the entire community of Libby is affected by asbestos issues, I am confident in this case the word *victim* was not intended to mean community. The Defendants object to several statements made at the CAG meeting by the Victim Witness Specialist and by a representative of the Environmental Protection Agency (EPA).

The objectionable statements by the Victim Witness Specialist include the following:

—The Specialist's statement that "the damage that was done ... was probably, by far, one of the largest environmental crimes."

—The Specialist's statement that this prosecution "might open up some eyes for those other districts" and lead to future prosecutions in other districts.

—With regard to who may be a victim, the statement that

> [Y]ou don't have to be physically diagnosed with an asbestos-related disease to be considered a victim. Many people are victims without being ill. There's financial hardship. There's just a number of avenues. The U.S. Attorney is adamant that everybody that feels they're a victim will be considered a victim and treated as such. So please don't think, well, I haven't been diagnosed or I don't have any family members that are ill. If you want to be a part of this, you're absolutely entitled to.

—With regard to whether a city or county may be a victim, the Specialist's response, "Possibly, yeah. It's something I'll look into."

—In response to an inquiry about the quality of government counsel, the Specialist's statement in response:

> And the judge made some very kind comments about [government counsel] in court the other day. There were the three attorneys for each defendant sitting there and the judge said, "I've worked for this man for seven years. He has the highest integrity and he doesn't play games. So if you guys want to play your games in the big cities, that's fine, but that's not going to happen with this Assistant U.S. Attorney."

—In response to an inquiry as to the possibility of a venue change, the Specialist's statement that "[F]rom the judge's comment [at the scheduling conference], he wants to keep it here in Montana."

—The Specialist's complimentary remark that the attorneys for the government did a good job of "selling their indictment [to superiors], showing that their proof was here before they could bring the indictment."

—the Specialist's statement that "we are looking into having the trial broadcast in Libby, Montana via closed-circuit TV, so everybody won't have to go to Missoula. We'll be able to broadcast the trial in Libby."

The Defendants also object to an EPA investigator's statement at the meeting that "[t]here are certain categories of witnesses that we're going to be looking for, and so there's times that we'll still be making phone calls and still talking to people."

A number of the statements made by the Victim Witness Specialist at the CAG meeting were included in an article in the local newspaper the following week.

## III. Analysis

The Defendants contend that the statements listed above have improperly tainted the jury pool and prejudiced the Defendants by risking their right to a fair trial. They argue that the statements violate (1) the Court's orders in this case; (2) Local Rules 83.10(d)(6) and 83.13 governing release of public statements; (3) Department of Justice regulations regarding public statements, which are codified at 28 C.F.R. § 50.2; and (4) the United States Attorney's Manual § 1–7.500 regarding public statements. The Defendants ask the Court to "compel the Government to abide by the Local Rules of the District of Montana, the internal press guidelines of the Department of Justice, the United States Attorney's Manual, and this Court's previous rulings."

The United States contends that the statements by its representatives at the CAG meeting do not run afoul of the standards set forth in the various authorities listed by the Defendants. The prosecution argues that the statements made at the CAG meeting are not only authorized but compelled by the Justice For All Act, and therefore cannot be the basis for a violation of any of the controlling authorities.

The manner of the announcement of the Indictment by the United States Attorney on February 7, 2005 was addressed at the March 9, 2005 scheduling conference and, from my perspective, any issues arising from the presentation of the Indictment and the accompanying press release were resolved by the Court's warning at the scheduling conference. I thought my views about the events of February 7, 2005 were clear.

## A. Controlling Legal Authority

### 1. The Court's Duty to Insure Against Dissemination of Prejudicial Information

The United States Supreme Court has established an obligation on the part of district courts to take whatever affirmative steps may be necessary to protect a criminal defendant's right to a fair trial untainted by prejudicial comments in the media. *See Sheppard v. Maxwell,* 384 U.S. 333, 363, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966)("The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences."). The Court of Appeals for the Ninth Circuit has recognized that "the *Sheppard* court unequivocally imposed a duty upon trial courts to take affirmative steps to insure the fairness of a criminal proceeding in the face of excessive publicity." *Levine v. U.S. Dist. Court for Cent. Dist. of California,* 764 F.2d 590, 596 (9th Cir.1985)(*citing Farr v. Pitchess,* 522 F.2d 464, 468 (9th Cir.1975)). The *Farr* court noted that "[t]he most practical and recommended procedure to insure against dissemination of prejudicial information is the entry of an order directing that attorneys, court personnel, enforcement officers and witnesses refrain from releasing any information which might interfere with the right of the defendant to a fair trial." 522 F.2d at 468 (citing *Sheppard,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600).

The foregoing cases require this Court to pursue whatever measures are necessary to insure a fair trial and prevent prejudicial pretrial publicity. As the Defendants point out, I have already taken such steps generally by and through Local Rules 83.10 and 83.13, and specifically in this case by informing the parties of my expectations at the scheduling conference. If it was not clear, then I hope to make it so now. This case will not be tried in the

press. It will be tried in the courthouse and nowhere else.

### 2. Rules and Orders Already in Effect

#### a. Local Rule 83.10

Local Rule 83.10(d)(6) provides:

From the time of arrest, issuance of an arrest warrant or the filing of a complaint, information or indictment in any criminal matter until the commencement of trial or disposition without trial, any attorney, law firm or governmental agency associated with the prosecution or defense shall not release or authorize the release of any extrajudicial statement that a reasonable person would expect to be disseminated by any means of public communication relating to that matter and concerning any opinion about the accused's guilt or innocence or about the merits of the case.

Local Rule 83.10(h) states, "In a case that is likely to be publicized, the Court, on motion of either party, or in its own discretion, may issue a special order governing any activity or conduct the trial judge believes appropriate for regulation to ensure a fair trial by an impartial jury."

#### b. Local Rule 83.13

Local Rule 83.13 requires that attorneys practicing before this Court adhere to the American Bar Association's Model Rules of Professional Conduct and the Montana Rules of Professional Conduct. Rule 3.8(f) of both the ABA Model Rules and the Montana Rules of Professional Conduct state that a prosecutor in a criminal case shall:

[E]xcept for statements that are necessary to inform the public of the nature and extent of the prosecutor's action and that serve a legitimate law enforcement purpose, refrain from making extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused and exercise reasonable care to prevent investigators, law enforcement personnel, employees or other persons assisting or associated with the prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making under Rule 3.6 or this Rule.

Rule 3.6 of the ABA Model Rules and the Montana Rules of Professional Conduct states in relevant part the following:

A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

#### c. The Court's March 9, 2005 Order

As noted above, I issued a directive specific to this case regarding pretrial publicity. The statement, in its entirety, is as follows:

I do know one thing. It's very hard to rule on objections that are in the newspaper. I don't want this case tried in the newspaper. I will expect everybody in this room to understand what I'm saying. I don't want to take it any further than that. I don't want lawyers quoted in the newspaper. Had I anything to say about how the Indictment was presented, it wouldn't have been done in the fashion it was, but I didn't have a say about it. I do have say now. And this case will not be tried in the press. I hope I am being clear.

Read together, the rules and orders currently in effect in this case prohibit any representative of the Department of Justice from (1) giving an opinion about the Defendants' guilt or innocence or the mer-

its of the case if a reasonable person would expect the statement to be disseminated; (2) making extrajudicial statements that are substantially likely to heighten public condemnation of the Defendants unless the statements inform the public of the nature of the prosecutor's action and serve a legitimate law enforcement purpose; (3) making extrajudicial statements that are reasonably expected to be made public and substantially likely to prejudice an adjudicative proceeding in the matter; and (4) providing statements to the media, except for statements confined to those matters set forth in Local Rule 83.10(e). The rules have no teeth if they can be easily circumvented by the staff or designated spokesman of the prosecutor's office.

### 3. Policies and Guidelines

The Defendants point out two applicable Department of Justice policy statements in addition to this Court's rules and orders governing pretrial statements by prosecutors.

### a. Department of Justice Policy Statement

The DOJ policy statement relating to public comments by prosecutors is codified at 28 C.F.R. § 50.2. That Section provides in relevant part:

> At no time shall personnel of the Department of Justice furnish any statement or information for the purpose of influencing the outcome of a defendant's trial, nor shall personnel of the Department furnish any statement or information, which could reasonably be expected to be disseminated by means of public communication, if such a statement or information may reasonably be expected to influence the outcome of a pending or future trial.

### b. The United States Attorney's Manual

Section 1–7.500 of the United States Attorney's Manual states, "At no time shall any component or personnel of the Department of Justice furnish any statement or information that he or she knows or reasonably should know will have a substantial likelihood of materially prejudicing an adjudicative proceeding."

The restrictions contained in the policy statements issued by the Department of Justice emphasize the constraints established by the rules and orders already in effect in this case, even though they are not enforceable by this Court. Accordingly, the conduct of the prosecution and its agents and representatives will be evaluated against the standard established by the Local Rules and my order of March 9, 2005.

### 4. The Justice For All Act

The prosecution's compliance with the Local Rules and the court's order regrading public statements cannot be assessed without also considering the prosecution's obligations under the Justice For All Act. The Act provides the following at 18 U.S.C. § 3771:

> (a) **Rights of crime victims.**—A crime victim has the following rights:
>
> (1) The right to be reasonably protected from the accused.
>
> (2) The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused.
>
> (3) The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially

altered if the victim heard other testimony at that proceeding.

(4) The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.

(5) The reasonable right to confer with the attorney for the Government in the case.

(6) The right to full and timely restitution as provided in law.

(7) The right to proceedings free from unreasonable delay.

(8) The right to be treated with fairness and with respect for the victim's dignity and privacy . . .

**(c) Best efforts to accord rights.—**

(1) Government.—Officers and employees of the Department of Justice and other departments and agencies of the United States engaged in the detection, investigation, or prosecution of crime shall make their best efforts to see that crime victims are notified of, and accorded, the rights described in subsection (a) . . .

**(d) Enforcement and limitations.—** . . .

(2) Multiple crime victims.—In a case where the court finds that the number of crime victims makes it impracticable to accord all of the crime victims the rights described in subsection (a), the court shall fashion a reasonable procedure to give effect to this chapter that does not unduly complicate or prolong the proceedings . . .

**(f) Procedures to promote compliance.—**

(1) Not later than 1 year after the date of enactment of this chapter, the Attorney General of the United States shall promulgate regulations[1] to enforce the rights of crime victims and to ensure compliance by responsible officials with the obligations described in law respecting crime victims.

(2) Contents.—The regulations promulgated under paragraph (1) shall— . . .

> (c) contain disciplinary sanctions, including suspension or termination from employment, for employees of the Department of Justice who willingly or wantonly fail to comply with the provisions of Federal law pertaining to the treatment of crime victims . . . .

This rule of law is important. But, it is not a statute authorizing vigilante justice and it must be read in light of the Constitutional presumption of innocence.

## B. The CAG Meeting

The Victim Witness Specialist and other speakers at the CAG meeting were under an obligation to exercise good judgment and to refrain from making statements that could reasonably be expected to be disseminated through the media and either (1) offered an opinion as to guilt or innocence or the merits of the case; (2) had a substantial likelihood of heightening public condemnation of the Defendants; or (3) had a substantial likelihood of prejudicing an adjudicative proceeding. Notwithstanding those limitations, the DOJ representatives were free to make public statements that inform the public of the requirements of the statute and of the prosecutor's action. Facts, not opinions, are what is permissible.

Most of the statements made by the Specialist are probably within the "legitimate law enforcement purpose" exception

---

**1.** The Attorney General appears not yet to have established the regulations required by

18 U.S.C. § 3771(f)(1).

because they were made in the course of fulfilling of DOJ's duties under the Justice For All Act. This is so even if the statements *should* not have been made in the manner they were. Although these statements were made in public and disseminated in at least one local newspaper, they relate to topics that the DOJ is arguably required to address under the Justice For All Act, including a right to have timely notice of proceedings.

The other statements identified by the Defendants as objectionable include the Specialist's statement that the acts and omission alleged in the Indictment constitute "by far, one of the largest environmental crimes;" her statement that this case may spawn future prosecutions in other districts; her statement regarding the Court's complimentary remarks toward government counsel; her statement that the prosecution "show[ed] that their proof was here before they could bring the indictment;" and the EPA investigator's statement that the prosecution will continue to contact potential witnesses.

These statements are not necessary for compliance with the Justice For All Act and are therefore subject to the rules and orders regarding public statements in this case. The statements violate those rules if they constitute a comment on guilt or innocence or are substantially likely to prejudice the proceedings. That is the question here.

Some of the comments seem to imply that the government's proof in this case is of a certain quality. However, those comments do not rise to the level of the type of statements barred by the Local Rules and the Court's order of March 9, 2005. It must be noted that the audience for the comment was a community involved with the crimes charged. While unnecessary, it is not surprising that the government would assure those people that quality

counsel had been assigned to the case and that the case has been well prepared.

The likelihood that a statement will prejudice the proceedings is no doubt assessed differently depending on whether the listener is a prosecutor or a defendant. However, having evaluated the statements in light of the circumstances in which they were made, I do not believe they are substantially likely to prejudice the proceedings. That is not to say that the choice of words by the prosecution's representatives at the CAG meeting was at all times ideal; but it can be a fine line to walk between complying with the Court's rules on one hand and prosecutor's obligations under the Justice For All Act on the other. In light of the circumstances in which the statements were made, I do not believe the prosecution has acted in violation of the Local Rules and the order of March 9, 2005.

## C. Relief Requested by the Defendants

The Defendants do not request that the prosecution be subject to a universal gag order, nor are they urging disciplinary action against the prosecution for violation of this Court's rules and orders. The Defendants expressly limit their motion to a request for an order requiring the United States to comply with the rules and orders already in place. In this regard the motion is by its own terms superfluous. As the Defendants aptly write in their brief in support of their motion, "[T]he only relief requested" is *already mandated* by various rules and regulations." (Emphasis in original.)

I do not intend to micromanage the progression of this case. There is no indication that any representative of the prosecution has acted with a motive to prejudice the proceedings against the Defendants. Should the Defendants believe in the future that the prosecution has violated the rules and orders regarding public state-

ments, a motion for sanctions or other disciplinary action may be in order. It is not necessary, however, to file a motion seeking nothing more than the Court's affirmation of rules and orders already in effect. The United States is aware of the rules and of this Court's expectation that they be followed. The Defendants' motion is denied.

### IV. Order

Based on the foregoing, IT IS HEREBY ORDERED that the Defendants' motion to compel the government to comply with rules governing public statements (dkt # 147) is DENIED.