UNITED STATES of America,
Plaintiff,

v.

W.R. GRACE, Alan R. Stringer, Henry A. Eschenbach, Jack W. Wolter, William J. McCaig, Robert J. Bettacchi, O. Mario Favorito, Robert C. Walsh, Defendants.

No. CR 05–07–M–DWM.

United States District Court,
D. Montana,
Missoula Division.

Feb. 13, 2009.

See also 401 F.Supp.2d 1057.

Vernon Broderick, Weil Gotshal and Manges, New York, NY, Thomas C. Frongillo, Patrick J. O'Toole, Weil Gotshal & Manges, Stephen A. Jonas, Wilmer Cutler Pickering Hale & Dorr, Boston, MA, Brian K. Gallik, Goetz Gallik & Baldwin, Aimee M. Grmoljez, Catherine A. Laughner, Browning Kaleczyc Berry & Hoven, Bozeman, MT, David B. Hird, Weil Gotshal & Manges, David S. Krakoff, Gary A. Winters, James T. Parkinson, Lauren Reid Randell, Mark Holscher, Mayer Brown Rowe Maw LLP, Jeannie S. Rhee, Howard M. Shaprio, Wilmer Cutler Pickering Hale & Dorr LLP, David M. Bernick, Barbara Harding, William B. Jacobson, Tyler D. Mace, Brian T. Stansbury, Laurence A. Urgenson, Kirkland & Ellis, Daniel P. Golden, David E. Roth, Stephen R. Spivack, Bradley Arant Boult Cummings, Washington, DC, Ronald F. Waterman, Gough Shanahan Johnson & Waterman, Palmer A. Hoovestal, Hoovestal Law Firm, Helena, MT, C. J. Johnson, Kalkstein & Johnson, Michael F. Bailey, Bailey & Antenor, Stephen R. Brown, Kathleen L. DeSoto, Charles E. McNeil, Garlington, Lohn & Robinson, PLLP, William Adam Duerk, Michael J. Milodragovich, Christian T. Nygren, Milodragovich Dale Steinbrenner & Nygren, Missoula, MT, William A. Coates, Roe Cassidy Coates & Price, Greenville, SC, Elizabeth Van Doren Gray, Sowell Gray Stepp & Lafitte, Columbia, SC, Angelo J. Calfo, Harold Malkin, Michelle K. Peterson, Yarmuth Wilsdon Calfo, Seattle, WA, Walter R. Lancaster, Kirkland & Ellis, Los Angeles, CA, Carolyn J. Kubota, Jeremy Maltby, O'Melveny & Myers, Los Angeles, CA, Scott A. McMillin, Kirkland & Ellis, Chicago, IL, for Defendants.

Kevin Cassidy, David M. Uhlmann, U.S. Dept. of Justice, Washington, DC, Kris A. McLean, Office of the U.S. Attorney, Missoula, MT, for Plaintiff.

## ORDER

DAVID W. MOLLOY, District Judge.

At the motions hearing held in this matter on January 22, 2009, the Court granted defendants' motion under Fed.R.Evid. 615, determining lay witnesses would be ex-

cluded from the proceedings scheduled to commence on February 19, 2009. The government argues that some of its witnesses are victims of the crimes alleged in the Superseding Indictment, and are therefore entitled to exercise the rights Congress has granted to victims of federal criminal offenses through the enactment of the Crime Victim Rights Act, 18 U.S.C. § 3771 ("the Act"), one of which is the right to not be excluded from court proceedings. The issue before the Court is whether the Court's ruling that witnesses will be excluded from these proceedings conflicts with what the Act requires in this case. None of the persons living in Libby, Montana, who believe they may be a victim of alleged crimes is excluded, only those persons listed as witnesses by the government are subject to the defendants' invocation of Rule 615 Fed.R.Evid.

## I

On February 2, 2009, the government filed a Motion to Accord Rights to Victim Witnesses, pursuant to the Act and Fed. R.Crim.P. 60(a)(2) and (b)(1). Under Rule 60(b)(1), "[t]he court must promptly decide any motion asserting a victim's rights[.]" The government asserts that its motion is part of the "best efforts" the Act requires it to make on behalf of crime victims, *see* 18 U.S.C. § 3771(c)(1), and correctly identifies the Court's obligation to "take up and decide any motion asserting a victim's right forthwith[,]" *see* 18 U.S.C. § 3771(d)(3).[1] The motion seeks a declaration that the thirty-four persons named in the attachment to the brief in support of the motion meet the definition of "crime victim" under the Act and are therefore entitled to the rights the Act confers.

Under the Act, a Court may not exclude from a public court proceeding a victim

testifying as a witness "unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding." 18 U.S.C. § 3771(a)(3); *see also* Fed. R. Crim P. 60(a)(2). The government argues that the thirty-four persons are witnesses *and* victims under the Act, and therefore the Court cannot exclude them from the proceedings pursuant to Rule 615 without finding by clear and convincing evidence that their testimony would be materially altered if they heard other testimony.

Shortly after the government filed its motion, on February 11, 2009, government witnesses Melvin and Lerah Parker appeared through counsel on a Motion to Assert Rights Pursuant to the Crime Victims' Rights Act. The brief in support of the Parkers' motion ("the Parker Brief") offers arguments similar to those the government does in its motion. Throughout the analysis set forth in this Order, the Court focuses primarily on the government's brief. The Parker brief is directly addressed when appropriate.

## II

At the January 22 motions hearing, before granting Defendants' request to exclude witnesses pursuant to Rule 615, the Court addressed the issue of victims and stated, "[A]s the Congress has defined the term 'crime victim,' there are no crime victims identifiable in this case." As discussed at length below, this conclusion is a consequence of the unusual theory of criminal liability the government has advanced in this matter, making this case different from those in which victims are readily identifiable. As the Court noted at the

---

1. The issue is raised for the first time within days of the start of trial and long after the government was admonished to express any concerns about the statute's application in this case.

hearing, in drug cases, cases involving child pornography, and allegations of robbery of a credit union or bank, individuals harmed as a result of the commission of these offenses are not difficult to identify. The same cannot be said here.

The January 22 hearing was not the first the time the Court addressed this issue during these proceedings. In the Court's Order of May 15, 2006, the Court said,

> From the beginning, the government has pushed the definition of who might be a victim, if any, in this case, beyond reason. No doubt individuals in Libby have concerns. No doubt the community has concerns. Nonetheless, it is beyond the pale to suggest that the legitimate concerns of an individual or a community transform the meaning of victim as intended by Congress.

*See* dkt. # 448. In the Court's Order of August 10, 2006, the parties were precluded from describing or identifying any witness as a victim. *See* dkt. # 714. And in a published Order, *United States v. W.R. Grace*, 401 F.Supp.2d 1057 (D.Mont.2005), the Court addressed the government's obligations under the Justice for All Act, which requires the government to comply with applicable provisions of the Crime Victims' Rights Act.

Unfortunately, it is necessary at the outset of this Order to clarify what this Court has *not* said on the issue of victims. This is easily accomplished by simply quoting the government's and the Parkers' characterizations regarding the Court's conclusions. Whether the inaccuracies the briefs contain are deliberate mischaracterizations of the Court's reasoning, or just profound misunderstandings of this sensitive and complex issue and the Court's conclusions, is not important for purposes of this Or-

der. It is important, however, that the Court make clear that it has not concluded, in this Order or any other, or on the record at any hearing in this matter, that "because the crimes alleged in this case have yet to be proven, no one can be considered a victim." Govt. Brief at 4. Nor has it concluded, as the Parkers assert, that they and other victims "are not protected by the [Act] because the trial has yet to be held and the defendants are disputing the charges." Parker Brief at 2. Having brushed aside these simplistic and incorrect statements of the law of the case in this action, a careful and deliberate consideration of the Act and its application to this case is necessary. *See* 18 U.S.C. § 3771(b)(1).

### III

The Act defines a crime victim as a "person directly and proximately harmed as a result of the commission of a federal offense." 18 U.S.C. § 3771(e). The Act necessarily presumes, according to its own terms, that it is applicable where 1) the commission of a federal offense has occurred, and 2) as a result of the commission of that federal offense, identifiable persons have been directly and proximately harmed. I cannot conclude, based on the federal offenses the government alleges in the Superseding Indictment, that any of the thirty-four individuals listed in the government's brief meet the definition of crime victim. As the government has charged the offenses in Counts I, II, III, and IV—the counts to which the Act is applicable [2]—the Court cannot identify any crime victims as the Act defines them, and the government's motion and the Parkers' motion must be denied.

---

**2.** Count I does not necessarily require the government to prove a "release of a hazardous air pollutant" within the statute of limitations period; Counts II–IV do. The Court

assumes, for the purposes of this Order, that the government plans to prove Count I with evidence of a "release" as the act in furtherance of the conspiracy alleged.

## A.

The government states in its brief that it "disagrees with [the Court's] application of the crime victim definition." It argues that "in this case there are individuals who believe they are victims of the crimes alleged in the indictment[.]" These victims, the government contends, "believe they have been harmed as a direct result of deliberate acts of the defendants." The government further contends that it "does not believe the victims in this case who are witnesses in the government's case in chief can be treated differently than a victim in a bank fraud case or a rape case." According to the government's brief, it "considers some 2000 people to be victims of the crimes alleged in the Superseding Indictment," at least thirty-four of which "are expected to testify."

The linchpin of the government's weak argument is *United States v. Turner*, 367 F.Supp.2d 319, 326 (E.D.N.Y.2005), a case involving the federal offense of mail fraud. The United States asks the Court to "adopt the approach taken by the district court" there. The opinion the government cites is the Magistrate Judge's Memorandum and Order addressing "what will likely be recurring issues involving the statutory rights of crime victims" under the Act. In the portion of the memorandum the government cites, the Magistrate Judge considered and rejected the proposition that the presumption of innocence means there can be no victims of an offense until the government proves its case.

> [T]he defendant continues to enjoy a presumption that he is innocent of the charge that he committed a Federal offense. Strictly speaking, then, I might be constrained to presume that there is no person who meets the definition of "crime victim" in this case. That syllo-

gism—which renders the CVRA inapplicable to this or any other criminal case unless and until the defendant is proved guilty beyond a reasonable doubt—produces an absurd result that I must presume Congress did not intend. Nevertheless, I cannot ignore the possibility that by requiring me to afford rights to "crime victims" in this case, the CVRA may impermissibly infringe upon the presumption of Turner's innocence.

*Id.*

Identifying what he perceived as a conflict between the presumption and the Act's definition of "crime victim," the New York Magistrate Judge concluded that the definition of crime victim included "any person who would be considered a 'crime victim' if the government were to establish the truth of the factual allegations in its charging instrument." *Id.* In other words, the Magistrate Judge determined that the identity of victims under the Act rests on a conditional assumption—i.e., on an assumption about who *would be* a victim *if* the government proved the accused's guilt. This analytical approach is incorrect in my view.

 The identification of crime victims, under the plain language of the Act, does not depend on the guilt or innocence of the accused, and therefore it is unnecessary to consider what effect the presumption of innocence has when it comes to identifying victims.[3] Whether there are crime victims under the Act does not depend on whether the person the government has accused of committing a federal offense is innocent or guilty. According to the Act's plain language, whether there are crime victims depends on 1) direct and proximate harm to a person 2) as the result of the commission of a federal

---

3. It is likewise unnecessary to consider, contrary to the Parker's mischaracterization of the Court's reasoning, whether there can be no victims "until the jury returns a guilty verdict." Parker Brief at 2.

offense. 18 U.S.C. § 3771(e). It is unnecessary, therefore, to assume that the person(s) the government accuses of committing a federal offense in fact did so. A court need only assume that the federal offense alleged has occurred, and then identify, if possible, who was directly and proximately harmed as a result of the commission of the offense. Notably, this approach is consistent with the government's position that the victims in this matter are "victims of the crimes alleged in the Superseding Indictment." Govt. Brief at 3–4.

To illustrate the foregoing point, where the government indicts an accused for allegedly robbing a bank, the court need not assume the accused is guilty in order to conclude the bank was robbed. The bank's depositors have been victimized whether by the accused or someone else. Likewise, if a jury determines the government fails to meet its burden of proof and acquits the accused, it does not follow that the bank was not robbed. As a starker example, when the Innocence Project exonerates through DNA evidence one mistakenly convicted of homicide, thereby proving actual innocence, no one concludes that the victim of the crime for which the innocent was mistakenly convicted was not in fact killed. Neither acquittal nor proof of actual innocence requires the conclusion, as the *Turner* opinion implies, that no offense has occurred and therefore there are no victims. Nor does the presumption of innocence.[4]

**B.**

■ The problem for those seeking to assert criminal victims' rights in this case, has nothing to do with the Court's "application of the crime victim definition." The problem is a consequence of the government's novel theory of the case. Importantly, the government has not alleged a federal offense the commission of which was complete before the earliest date within the statute of limitations period. This may seem like an unremarkable observation considering that if it had, the statute of limitations would bar prosecution of those offenses. The observation is necessary, though, because the government apparently plans to introduce evidence, for some purposes, from before the earliest date within the statute of limitations period. As discussed below, this temporal framework within which the government has situated its theory of criminal liability affects the analysis of who is an identifiable victim of the federal offenses alleged in the Superseding Indictment. The government's theory of the case requires the Court to conclude that if there are victims in this case, they are not identifiable victims within the meaning of the Act.

**1.**

Section 7413(c)(5)(A) of Title 42 of the United States Code provides criminal penalties for "any person who knowingly releases into the ambient air any hazardous air pollutant ... and who knows at the time that he thereby places another

---

**4.** The government's and the Parker's citations to *In re Mikhel,* 453 F.3d 1137 (9th Cir.2006), are unhelpful. They cite the case for the proposition that this "Court's reasoning here that the Parkers (and other victims) are not protected by [the Act] until the issue of liability has been fully tried directly conflicts with the Ninth Circuits' holding." This is an inaccurate statement of this Court's reasoning, and misunderstands the Ninth Circuit's holding. *See id.* at 1140 ("[W]e grant the United States' petition in part and instruct the district court to consider whether clear and convincing evidence proves that the victim-witnesses' testimony will be 'materially altered' if they are allowed to attend the trial in its entirety. We decline to order the district court to allow the courtroom presence of the victim-witnesses, or to provide any other specific instructions."). The Ninth Circuit was not confronted in that murder case with deciding who might be an identifiable victim.

person in imminent danger of death or serious bodily injury[.]" For purposes of determining whether there are identifiable victims of the federal offenses the government alleges, the Court assumes the commission of the federal offenses the government alleges in the Superseding Indictment. The government appears to believe it can prove the commission of the offenses with evidence spanning a period of decades. The government has not, it bears repeating, alleged any federal offense the commission of which was ostensibly complete before the earliest date within the statute of limitations period—November 3, 1999. In light of this, it is necessary to determine what the provisions of § 7413 must mean under the government's theory of criminal liability as set forth in the Superseding Indictment.

The government's theory requires reading "releases"—the *actus reus* of the offenses alleged—to include at least two temporally distinct events: 1) an act, that 2) causes an eventual consequence. Here, the eventual consequence is the introduction of a hazardous air pollutant into the ambient air which endangers another person. The act precedes its eventual consequence and the *actus reus* of the offense is not complete until both have occurred. Put differently, the government's theory requires reading the *actus reus* of the offense as "release or cause to be released," where "cause to be released" means the commission of an act temporally distinct from its eventual consequence, so long as both occur.

Apparently under the government's theory, the act need not occur on or after the earliest date within the statute of limitations period, so long as its eventual conse-

quence does. This reading of the statute is necessary to avoid the statute of limitations, which in this case bars prosecution of any offense committed before November 3, 1999. The government apparently intends to show, in part, that Defendants committed acts before November 3, 1999, the eventual consequences of which—the introduction of a hazardous air pollutant into the ambient air resulting in endangerment—occurred after November 3, 1999. Necessary to the government's theory, then, is the proposition that only the eventual consequence—the introduction of a hazardous air pollutant into the ambient air and resulting endangerment—must have occurred on or after the earliest date within the statute of limitations period.

The task of interpreting the statute to accommodate the government's theory of the case does not end here. Section 7413 requires also that the government prove Defendants "knew at the time" of the release that they "thereby place[d] another person in imminent danger of death or serious bodily injury[.]" 42 U.S.C. § 7413(c)(5)(A). Given the expanded temporal domain the word "release" must cover under the government's theory, the question is to which moment "at the time" refers.

The events the government identifies as the eventual consequences completing the *actus reus* of the offense do not necessarily directly involve Defendants.[5] In other words, to commit the federal offenses the government alleges in the Superseding Indictment, the only affirmative conduct necessary on the part of a defendant is an act (regardless of when it occurs), the eventual consequence of which occurs later (so long

---

**5.** This may explain in part why the government relies on 18 U.S.C. § 2 to support its theory of criminal liability. At this point, the theory also seems to lack accounting for the provisions of 42 U.S.C. § 7413(c)(5)(B),

which requires an individual defendant's actual awareness that a person was placed in imminent danger of death or serious bodily injury.

as it occurs on or after the earliest date in the statute of limitations period) at which time the defendant's presence is irrelevant to the completion of the *actus reus.* Under the government's theory, "at the time" must refer to acts allegedly committed before November 3, 1999, and not to their eventual consequences, because part of what makes the conduct criminal is that the offender "knows at the time[.]"

To summarize: if Defendants have violated § 7413 under the government's theory, the statute must be read to provide criminal penalties for any person who knowingly releases (which includes committing an act the eventual consequence of which is to introduce into the ambient air any hazardous air pollutant which endangers another), and who knows at the time he releases (or, knows at the time he commits the act the eventual consequence of which is to introduce into the ambient air any hazardous air pollutant) that he thereby places another person in imminent danger of death or serious bodily injury. It is at this point the issue of victims arises— those persons placed in imminent danger of death or serious bodily injury as the result of the eventual consequences of prior acts committed with the requisite intent (i.e., "knowingly," and, "knows at the time").

Assuming the statute, as construed here to accommodate the government's theory of criminal liability, recognizes a victim, the victim must be "another person" who is "place[d] ... in imminent danger of death or serious bodily injury" as the result of the *actus reus,* i.e., a "release," committed with the requisite intent. As discussed above, the event completing the *actus reus*—the introduction into the ambient air of a hazardous pollutant—must have occurred after November 3, 1999, at

which time "another person" must have been placed "in imminent danger of death or serious bodily injury." It necessarily follows that under the government's theory of the case, the words "places another person in imminent danger" must refer to a moment after November 3, 1999. If they do not, the statute of limitations prevents the government from prosecuting the federal offenses alleged in the Superseding Indictment. Put simply, if there are victims of the federal offenses the government alleges, they must have been imminently endangered after November 3, 1999.

The government offers no such argument, and points to no facts indicating that the witnesses who believe they are victims were imminently endangered at some moment after November 3, 1999.[6] To the contrary, the government's documentary evidence and the testimony of its experts pertaining to the timing of exposure and the manifestation of the alleged harm suggest that the individuals the government identifies as victim-witnesses may not be victims of the federal offenses alleged in the Superseding Indictment. *See, e.g.,* Weis Disclosure at 7–10. The government has provided no basis for identifying victims other than that certain persons (along with the government) believe they are victims, and certain persons are identified as knowingly endangered in the Superseding Indictment.

This conclusion is consistent with the Court's statement at the January 22 hearing: "[I]t is my determination, as the Congress has defined the term crime victim, there are no crime victims *identifiable* in this case." (emphasis added). And it is consistent with the Court's Order of May 15, 2006, where the Court said, "[I]t is

---

**6.** The Parkers may be arguing that they fit this description. The Court disagrees. *See* **III B.2.,** *infra.*

beyond the pale to suggest that the legitimate concerns of an individual or a community transform the meaning of victim as intended by Congress." Dkt. # 448. Any argument to the contrary relying on the law of the case doctrine is untenable.[7]

### 2.

The government's and the Parkers' briefs bring to light an additional problem with identifying victims of the federal offenses alleged in the Superseding Indictment. The government's brief suggests, and the Parker brief explicitly asserts, that the mere fact that individuals are specifically identified as victims in the Superseding Indictment makes them victims under the Act. *See* Govt. Brief at 4; Parker Brief at 8. Section 3771(e) of Title 18 does not define a crime victim as a person identified in an indictment as a victim of the offense alleged. It defines a crime victim as "a person directly and proximately harmed as a result of the commission of a Federal offense." *Id.*

As already discussed at length, the federal offenses the government alleges prohibits conduct, committed with the requisite intent, that results in imminent danger of death or serious bodily injury to someone other than the offender. The offense is known colloquially as "knowing endangerment." The prohibited result is creating a risk of harm to another person. In other words, it is not necessary that "another person" inhale a "hazardous air pollutant" that has been released "into the ambient air" and experience the particular harm associated with the pollutant. The

crime is complete when "another person" is placed in "imminent danger," i.e., when the risk of harm is imminent.

According to the charging statutes' own terms, a victim of the offense is another person exposed to an imminent risk of harm. The Criminal Victim's Rights Act, on the other hand, defines a crime victim as "a person directly and proximately harmed." The government has not addressed this problem. One plausible resolution of the issue here is to say that the federal offenses alleged in the Superseding Indictment have "victims" who have been exposed to an imminent risk of harm, but who have not necessarily been harmed. This interpretation leads to the conclusion that because victims of the federal offenses alleged are not necessarily harmed, they are not necessarily victims under the Act, which are by definition persons directly and proximately harmed.

The Parkers argue that in paragraphs 165 and 166, and in of Count III of the Superseding Indictment, they are specifically identified as victims of knowing endangerment. Parker brief at 9–10. Count III alleges Defendants committed the offense of knowing endangerment "by selling real property ... to the Parker family." *See* Superseding Indictment ¶ 185. Paragraphs 165 and 166 allege they did so knowing the property was contaminated and failing to disclose the hazard. Leaving aside the question of how the offense, the *actus reus* of which is complete upon the introduction into the ambient air of a hazardous air pollutant, could be complete

---

7. *See, e.g.,* Parker brief at 14–16. The Parker's assert that when the Court recognized, in *W.R. Grace,* 401 F.Supp.2d at 1063–64, that the statements at issue in that Order were "probably within the legitimate law enforcement purpose exception because they were made in the course of fulfilling of DOJ's duties under the Justice for All Act," the Court "necessarily found that there were

'crime victims' under the Act." The brief makes no attempt to offer an intermediate premise—which would preferably come in the form of a legal argument—connecting the first premise (the Court recognized the government was attempting to fulfill its statutory obligations) to its conclusion (there are crime victims under the Act). The argument is therefore unpersuasive.

upon the transfer of title to real property, Count III seems to allege that the sale of the property exposed the Parker family to an imminent risk of harm. It does not allege the Parkers were directly and proximately harmed as the result of the commission of the offense of knowing endangerment.

In this criminal case the Court is not in a position to address whether individuals have been harmed as result of hazardous air pollutants in Libby, Montana. The Superseding Indictment does not allege that they have. The government and the Parkers seem to conflate the federal offenses alleged in the Superseding Indictment with a more general perception about the effects on the Libby community of exposure to harmful pollutants. But the government has not charged Defendants with harming members of the Libby community. It has charged the offense of knowing endangerment. *See* Govt. Brief at 6 ("In this case, the Superseding Indictment charges knowing endangerment under the Clean Air Act . . . and a conspiracy to violate the Clean Air Act (with a knowing endangerment object.")). Because of the nature of the government's theory, this Court cannot conclude there are identifiable "crime victims" as the Act defines the term.

## IV

The Court recognizes, as the government emphasizes, that many people believe they have been harmed by Defendants. Those who hold this belief are welcome to attend the trial, which is a public proceeding. It is this Court's duty, however, to ensure a fair and efficient trial on the merits of the government's case. As counsel for the government is well aware, it is customary in this Court for counsel for either side to invoke Rule 615 and for witnesses to be excluded from trial proceedings on this basis. The rule is a procedural protection for either or both parties. It can be invoked when one or the other litigants wants to keep witnesses from hearing each other, or other evidence. When the rule is invoked by either party, "the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." Rule 615, Fed. R.Evid.

If there were identifiable victims of the federal offenses the government alleges in the Superseding Indictment, the Court would be faced with the apparent conflict between what the Act requires and the purpose of Rule 615. The Court would be required under the Act to allow victim-witnesses in the courtroom unless after a hearing it concluded that clear and convincing showed that testimony by the witness would be materially altered if they heard other testimony at that proceeding. 18 U.S.C. § 3771(a)(3). Because there are no identifiable victims, as the Act defines them, of the federal offenses alleged in the Superseding Indictment, the Court need not engage in this inquiry.

Accordingly,

IT IS HEREBY ORDERED that the United States Motion to Accord Rights to Victim–Witnesses (dkt. # 896) is DENIED.

IT IS ALSO ORDERED that the Parkers' Motion to Assert Rights (dkt. # 908) is DENIED.